FILED
U.S. District Court
District of Kansas

JUL 31 2024

Clerk, U.S. District Court
By _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

Plaintiff,

v.

Case No. 23-cr-10050

AUSTIN SCHOEMANN,

Defendant.

PLEA AGREEMENT PURSUANT TO FEDERAL RULE
OF CRIMINAL PROCEDURE 11(c)(1)(C)

The United States of America, by and through Assistant United States Attorney Aaron L. Smith and Civil Rights Division Criminal Section Trial Attorney Erin Monju, Austin Schoemann, the defendant, personally and with his counsel, Michael Shultz, hereby enter into the following plea agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure:

1. **Defendant's Guilty Plea.** The defendant agrees to plead guilty to Counts 1 through 5 of the Superseding Information charging in Counts 1 and 2 violations of 18 U.S.C. § 245, that is, Interference with a Federally Protected Activity; charging in Counts 3 and 4 violations of 18 U.S.C. § 875(c), that is, Interstate Threats; and charging in Count 5 a violation of 42 U.S.C. § 3631, that is, Interference with Housing. By entering into this Plea Agreement, the defendant admits to knowingly committing the offenses, and to being guilty of the offenses. The defendant understands that the maximum sentence that may be imposed as to Counts 1 and 2 is, for each count, not more than 10 years of imprisonment, up to a $250,000 fine, not more than 3 years of supervised release, and a $100.00 mandatory special assessment per count. The defendant understands that the maximum sentence that may be imposed as to Counts 3 and 4 is, for each

Ver. 03-01-24

count, not more than 5 years of imprisonment, up to a $250,000 fine, not more than 3 years of supervised release, and a $100.00 mandatory special assessment per count. The defendant understands that the maximum sentence that may be imposed as to Count 5 of the Superseding Information to which he has agreed to plead guilty is not more than 10 years of imprisonment, up to a $250,000 fine, not more than 3 years of supervised release, and a $100.00 mandatory special assessment. The defendant further agrees to abandon and forfeit property to the United States, as agreed.

2.  **Factual Basis for the Guilty Plea.**  The parties agree the facts constituting the offense to which the defendant is pleading guilty are as follows:

In or about December 2021, Schoemann entered into a romantic relationship with M.P., a white woman. M.P. ended the relationship about one month later. After the breakup, Schoemann came to believe that M.P. was dating Black men and associating with Black people. These beliefs upset Schoemann, and he responded by, between in or about January and August 2022, using force and the threat of force to intimidate and interfere with M.P.'s occupation of her dwelling in the District of Kansas. Specifically, he tried to run off Black people who visited her home or property, and he sent racially-threatening messages to her, her family members, and other people she knew.

Schoemann rented a house just down the street from M.P.'s home in Wellington, Kansas. On occasions when Schoemann believed that she had Black houseguests, he would stand outside her house and shout threats and racial slurs. When he would see Black visitors pull up to her home in their vehicles, Schoemann would confront and threaten them outside. He followed through on these threats on one occasion by destroying the windshield of M.P.'s mother's car, which he mistakenly believed belonged to a Black houseguest of M.P.

Schoemann interfered with M.P.'s occupation of her dwelling by sending racially-motivated threats to her family members and other people she knew. For example, on or about January 27, 2022 and February 1, 2022, Schoemann sent M.P.'s family and other people she knew a video containing multiple threats to murder Black people. In the video, Schoemann posed with a Smith and Wesson assault rifle, a Remington Model 870 shotgun, and a Remington Model 11 shotgun. He stated, among other things, "Here's what I'm going to get it done with," "Put me in front of a welfare line; I will get rid of poverty," "One cap to the head, nigger dead," "this [shotgun] is silky smooth and yeah it will kill niggers," and "Bye . . . you fucking cotton-picking lazy niggers." Later, on or about July 3, 2022, Schoemann sent messages to one of M.P.'s family members containing threats to injure J.F. and C.W., who are two Black acquaintances of M.P., as well as other Black people. He wrote, among other things, "I'm going to fucking go into some shit that needs to be done like n****** disappearing," "I'm going to get rid of every n***** in this town," "you can tell [J.F. and C.W.] that their last minutes of life are soon," and "[A]ll these n****** are going down . . . I'm a fucking white man." Both the video and the messages were

2

transmitted in interstate commerce, that is, to and between the State of Kansas and the State of California through the use of cell phones, the internet, and the internet messaging services of Facebook Messenger.

Schoemann did these things because he believed that M.P., as a white woman and his ex-girlfriend, should not have been going on dates with Black men or associating with Black people. He made these beliefs clear to M.P. and her family members. As he stated in a text message he sent to M.P.'s step-mother on or about June 28, 2022, "I'm the guy that runs up niggers that need to be ran off because they're trash . . . ." He made similar statements to M.P. As he told her in a text message he sent on or about June 22, 2022, "You chose a Niger [sic] over me. That's disgusting." After sending M.P. a picture of the license place of a vehicle parked outside her home, he followed up with several threats: "[T]ell that Niger [sic] when he walked outside I'm going to beat him to death"; "I am going to beat that Niger [sic] to death and go to prison and not care after I pull all of his teeth out." When M.P. tried to calm Schoemann down and explain that the car belonged to her mother, Schoemann refused to believe her and continued with his threats. "I would not hurt your mom's car but let that Niger [sic] know that he's dead and I'm going to make sure of it and a lot of people are too. . . . White people know what cars look like white people know what different rims look like and I'm on that white s***." Based on messages like the preceding, the shattering of her mother's windshield, and Schoemann's physical stalking of her home, M.P. ultimately sought and received a restraining order against him.

In an incident unrelated to the stalking of M.P., on or about July 27, 2022, Schoemann visited a QuikTrip gasoline station in Wichita, Kansas. Schoemann, who was seated in his vehicle and had been drinking, honked his horn at H.A. and S.C., two Black juveniles, while they were walking into the gasoline station. After they came back outside, Schoemann got out of his car and started arguing with them. According to the witnesses, Schoeman became upset, and stated "white power" and started using racial slurs. L.R., a Black adult who was sitting nearby and had observed what appeared to be racial harassment, got out of her vehicle and attempted to calm Schoemann down. He responded by threateningly brandishing a pistol and ejecting (not firing) a bullet from the chamber. Schoemann threatened H.A. and S.C. because they are Black and because they were enjoying the services and facilities of the QuikTrip. He threatened L.R. because she was lawfully aiding the two young men in their right to enjoy the QuikTrip without discrimination on account of race or color.

   3. **Proposed Rule 11(c)(1)(C) Sentence.** The parties propose, as an appropriate disposition of the case:

   (a) a sentence within the range of 63-84 months in prison;

   (b) three (3) years of supervised release; and

   (c) the mandatory special assessment of $100.00 per count of conviction;

The parties seek this binding plea agreement as an appropriate disposition of the case, because if the Court permits itself to be bound by the proposed sentence, it brings certainty to the sentencing

3

process; it assures that the defendant and the government will benefit from the bargain they have struck; it serves the interests of justice; and it assures a sentence consistent with the sentencing factors of 18 U.S.C. § 3553(a). If the Court does not agree with the sentence, the defendant and United States may be restored to the positions they maintained prior to reaching this plea Agreement. This plea agreement centers on the defendant's agreement to enter his guilty plea as soon as the Court's schedule permits, thereby preserving valuable Court, prosecution, defense, United States Probation Office, United States Marshals' Service and other law enforcement resources.

4.  **Application of the Sentencing Guidelines.** The parties are of the belief that the proposed sentence does not offend the advisory sentencing guidelines. Because this proposed sentence is sought pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties are not requesting imposition of an advisory guideline sentence.

5.  **Government's Agreements.** In return for the defendant's plea of guilty as set forth herein, the United States agrees to dismiss the remaining counts of the Indictment at the time of sentencing, and agrees to not file any additional charges against the defendant arising out of the facts forming the basis for the present Superseding Information or original Indictment.

6.  **Consequences for Violating the Plea Agreement.** The United States' obligations under this plea agreement are contingent upon the defendant's continuing to manifest an acceptance of responsibility. If the defendant denies or gives conflicting statements as to his involvement, falsely denies or frivolously contests relevant conduct the Court determines to be true, willfully obstructs or impedes the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempts to do so), or has engaged in additional criminal conduct, the United States reserves the right to petition the Court for a hearing to determine if he has breached this plea agreement.

If the Court finds by a preponderance of the evidence that the defendant (1) has breached or violated this plea agreement; (2) has willfully obstructed or impeded the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempted to do so); (3) has engaged in additional criminal conduct; or (4) has otherwise failed to adhere to this plea agreement's terms, this plea agreement will be deemed null and void, and the United States may pursue any additional charges arising from the criminal activity under investigation, as well as any charges for any perjury, false statement, or obstruction of justice that may have occurred.

If the Court finds the defendant has violated this plea agreement, he understands and agrees that all statements he made, any testimony he gave before a grand jury or any tribunal, or any leads from such statements or testimony, shall be admissible against him in any and all criminal proceedings. The defendant waives any rights which might be asserted under the United States Constitution, any statute, Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 410, or any other federal rule that pertains to the admissibility of any statements he made subsequent to this plea agreement.

7. **Whether to Accept the Proposed Plea Agreement and Sentence is Up to the Court.** The Court has no obligation to accept the proposed plea agreement and sentence. It is solely within the Court's discretion whether to accept the proposed binding plea agreement as an appropriate disposition of the case.

8. **Withdrawal of Plea Permitted Only if the Court Does Not Accept the Plea Agreement and Proposed Sentence.** If the Court agrees to be bound by the proposed plea agreement and sentence, the parties shall be bound by all the terms of the proposed plea agreement and the defendant will not be permitted to withdraw his guilty plea. If the Court announces that it will NOT be bound by the proposed plea agreement, the parties agree that at that time either party may withdraw the proposed plea agreement, and if either does so, then all parties will be restored

to the positions they were in prior to the entry of the defendant's plea. If neither party elects to withdraw the proposed plea agreement at the time the Court announces that it will not be bound, and before the Court proceeds with sentencing, then the parties shall be bound by all the terms of the proposed plea agreement and the defendant will not be permitted to withdraw his guilty plea.

9. **Forfeiture of Assets.** The defendant knowingly and voluntarily agrees and consents to the forfeiture of the following property to the United States:

    A.    SCCY, model CPX-1, 9mm caliber handgun, s/n 158022; and

    B.    any ammunition.

The defendant agrees that this property was involved or used in the commission of Counts 1 and 2. The defendant knowingly and voluntarily waives his right to a jury trial regarding the forfeiture of property, and voluntarily waives all constitutional, legal and equitable defenses regarding the forfeiture of property and withdraws any administrative claim or petition for remission regarding the property. The defendant acknowledges and agrees that the forfeiture of this property shall not be deemed an alteration of his sentence or this agreement, and shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon him in addition to forfeiture. Additionally, the defendant agrees to the immediate entry of the Preliminary Order of Forfeiture, and agrees to sign any and all documents necessary to effectuate the forfeiture and transfer of his interest and possession of the property identified in this paragraph to the United States prior to the imposition of sentence.

10. **Payment of Special Assessment.** The defendant understands that a mandatory special assessment of $100.00 per count of conviction will be entered against him at the time of sentencing. The defendant agrees to deliver to the Clerk of the United States District Court payment in the appropriate amount no later than the day of sentencing. The defendant has the burden of establishing an inability to pay the required special assessment. The parties

acknowledge that if the Court finds the defendant is without resources to pay the special assessment at the time of sentencing, the Court may allow payment during his period of incarceration.

11. **Waiver of Appeal and Collateral Attack.** The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, his conviction, or the components of the sentence to be imposed herein, as well as the length and conditions of supervised release. The defendant is aware that 18 U.S.C. § 3742 affords him the right to appeal the conviction and sentence imposed. By entering into this agreement, the defendant knowingly waives any right to appeal a sentence imposed in accordance with the sentence recommended by the parties under Rule 11(c)(1)(C). The defendant also waives any right to challenge his sentence, or the manner in which it was determined, or otherwise attempt to modify or change his sentence, in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 (except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)), or a motion brought under Federal Rule of Civil Procedure 60(b). In other words, the defendant waives the right to appeal the sentence imposed in this case, except to the extent, if any, the Court imposes a sentence in excess of the sentence recommended by the parties under Rule 11(c)(1)(C). However, if the United States exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence received, as authorized by 18 U.S.C. § 3742(a). Notwithstanding the foregoing waivers, the parties understand that the defendant in no way waives any subsequent claims with regards to ineffective assistance of counsel or prosecutorial misconduct.

12. **FOIA and Privacy Act Waiver.** The defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without

limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552. The defendant further waives any rights conferred under the Privacy Act of 1974, 5 U.S.C. § 552a, to prevent or object to the disclosure of records or materials pertaining to this case.

13. **Full Disclosure by United States.** The defendant understands the United States will provide to the Court and the United States Probation Office all information it deems relevant to determining the appropriate sentence in this case. This may include information concerning his background, character, and conduct, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the count to which he is pleading guilty. The United States may respond to comments he or his attorney makes, or to positions he or his attorney takes, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The defendant also has the right to provide information concerning the offense and to make recommendations to the Court and the United States Probation Office.

14. **Parties to the Agreement.** The defendant understands this plea agreement binds only him and the United States Attorney for the District of Kansas, and that it does not bind any other federal, state, or local prosecution authority.

15. **Voluntariness of Guilty Plea.** The defendant has had sufficient time to discuss this case, the evidence, and this Plea Agreement with his attorney and he is fully satisfied with the advice and representation his attorney provided. Further, the defendant acknowledges that he has read the Plea Agreement, understands it, and agrees it is true and accurate and not the result of any threats, duress or coercion. The defendant further understands that this Plea Agreement supersedes any and all other agreements or negotiations between the parties, and unless subsequently supplemented in writing with the joint approval of the parties, this Plea Agreement embodies each

and every term of the agreement between the parties. The defendant acknowledges that he is entering into this Plea Agreement and is pleading guilty because he is guilty. He further acknowledges that he is entering his guilty plea freely, voluntarily, and knowingly.

_____  Date: 7/31/24
AARON L. SMITH
Assistant United States Attorney


_____  Date:_____
ERIN MONJU
Trial Attorney, Civil Rights Division


s/ Duston Slinkard  Date: 7/31/24
DUSTON SLINKARD
Assistant United States Attorney
Supervisor


_____  Date: 7/31/24
AUSTIN SCHOEMANN
Defendant


_____  Date: 7/31/24
MICHAEL SHULTZ
Counsel for Defendant

9